IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Dec 30, 2013

| | |
|---|---|
| IN RE: <br><br> ANGELA MICHELLE EDMOUNDS HARRISON, <br><br> Debtor. | Case No. 11-13580-M <br> Chapter 7 |
| STEVEN W. SOULÉ, <br><br> Plaintiff, <br><br> v. <br><br> JIMMY LEWIS GRAGG, GLENDA J. GRAGG, and MELODY DAWN LAVENDER, <br><br> Defendants. | Adv. Proc. No. 13-01010-M |

**MEMORANDUM OPINION**

Whether for carpentry or estate planning, it is usually a good idea to use the right tool for the job. Unfortunately, when it comes to estate planning and asset transfer, people are often ill-informed about the tools available to them and the perils of choosing the wrong one. If a parent wants to gift an asset to a child only upon the parent's death or incapacity, state law provides tools to accomplish that end.[1] Unfortunately, use of the wrong tool could unwittingly result in a present transfer and the unintended loss of the asset. In this case, the parents executed deeds conveying an interest in several pieces of real estate to their daughter. The daughter sought bankruptcy protection, and her

---

[1] For example, in Oklahoma property may be transferred using a "Transfer-on-Death Deed," by following the provisions of the Nontestamentary Transfer of Property Act, Okla. Stat. tit. 58, §§ 1251–1258.

bankruptcy trustee seeks to liquidate her interest in the properties. The parents claim that the transfer was part of an estate plan, and effective only upon the parents' demise. The question is whether the parents used the right tool for the job. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[2] Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). A determination of the extent and nature of the estate's interest in property and orders approving the sale of property are core proceedings as defined by 28 U.S.C. § 157(b)(2)(A, N).

## Findings of Fact

Angela Michelle Edmounds Harrison (the "Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 15, 2011 (the "Petition Date"). Steven W. Soulé ("Trustee") was subsequently appointed to administer the assets of the Debtor's bankruptcy estate. Unsecured creditors have filed claims against Debtor's estate totaling $35,232.27.

Jimmy Lewis Gragg and Glenda J. Gragg (the "Graggs") are the Debtor's parents. Melody Dawn Lavender ("Lavender") is the Debtor's sister. Lavender and the Graggs (collectively, the "Defendants") together with Debtor, are co-owners of three tracts of real property located in Tulsa County, Oklahoma. Two of those tracts are at issue here.

---

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

*The Ithica Property*

The Defendants, along with the Debtor, each own an undivided 1/4 interest in the following real property located in Tulsa County, Oklahoma:

> Lot 7, Block 5, Vandever East 2nd, an addition to the City of Broken Arrow, Tulsa County, State of Oklahoma, according to the recorded plat thereof (aka 509 W. Ithica St., Broken Arrow, OK) (the "Ithica Property").

The Ithica Property is a single family residence. The Debtor received her 1/4 interest in the Ithica Property pursuant to a Quitclaim Deed dated June 21, 2011, wherein the Graggs, inter alia, were Grantors and the Graggs, Lavender, and the Debtor were Grantees (the "June 21 Deed"). The June 21 Deed was recorded in the Tulsa County Land Records on June 30, 2011. A tenant occupies the Ithica Property under a lease agreement with the Graggs. At trial, the tenant testified that, as of the Petition Date, he considered himself to be a lessee of the Graggs, and asserted no interest in the Ithica Property beyond his rights as a lessee. The Graggs presented tax returns going back several years showing that they, and not Lavender or the Debtor, received all rental income, paid all taxes, and took all tax deductions associated with the Ithica Property.

In her bankruptcy schedules, Debtor listed a 25% interest in fee simple in the Ithica Property on Schedule A, with the following footnote:

> *This is the Debtor's parent's real estate and in their estate planning process, they had added the Debtor and her sister to the legal title via quit claim deed dated September 3, 2008 then again on a restated deed dated June 30, 2011. Debtor did not derive any income from said property as possession, control and actual ownership remain in her parents.[3]

A title search conducted by the Trustee as of September 4, 2013, showed that pursuant to the June 21 Deed, title to the Ithica Property is vested in each of the Defendants and the Debtor as joint

---

[3] *See Case No. 11-13580-M,* Docket No. 1, at 6.

tenants, with rights of survivorship.[4] In addition to the June 21 Deed, the title search indicated that a Quitclaim Deed, dated August 30, 2008, had been recorded on September 3, 2008, wherein the Graggs were Grantors and the Graggs, Lavender, and the Debtor were Grantees (the "August 30 Deed").[5] An appraiser engaged by the Trustee testified that, based on comparable sales in the area, the Ithica Property has a current market value of approximately $62,000 to $63,000.

*The 17th Place Property*

The Defendants, along with the Debtor, each own an undivided 1/4 interest in the following real property located in Tulsa County, Oklahoma:

> Lot Four (4), Block Two (2), Woodland Park Addition to the City of Tulsa, Tulsa County, State of Oklahoma (aka 2128 E. 17th Pl., Tulsa, OK) (the "17th Place Property," and together with the Ithica Property, the "Properties").

The 17th Place Property is also a single family residence. The Debtor received her 1/4 interest in the 17th Place Property pursuant to a Corrected Quitclaim Deed dated April 27, 2011, wherein four individuals unrelated to this litigation were Grantors and the Graggs, Lavender, and the Debtor were Grantees (the "April 27 Deed").[6] This Corrected Quitclaim Deed was recorded in the Tulsa County Land Records on April 28, 2011. A tenant occupies the 17th Place Property under a lease agreement with the Graggs. At trial, the tenant testified that, as of the Petition Date, he considered himself to be a lessee of a management company named Reynolds Realty, and did not assert any other interest in the 17th Place Property beyond his rights as a lessee. Mr. Gragg testified that he authorizes

---

[4] *See* Trustee's Ex. 6-4.

[5] *See* Trustee's Ex. 6-2.

[6] The Pre-Trial Order, *at Docket No. 16*, submitted by the parties, incorrectly identifies the Graggs as the Grantors in this transaction. The face of the deed, at Trustee's Ex. 4, indicates otherwise.

4

Reynolds Realty to collect rent and manage the 17th Place Property on his behalf, for which service he pays them a small fee. The Graggs presented tax returns going back several years showing that they, and not Lavender or the Debtor, received all rental income, paid all taxes, and took all tax deductions associated with the 17th Place Property.

Debtor scheduled a 25% interest in fee simple in the 17th Place Property on Schedule A, with the following footnote:

> *This is the Debtor's parent's real estate and in their estate planning process, they had added the Debtor and her sister to the legal title via quit claim deed dated April 28, 2011. Debtor did not derive any income from said property as possession, control and actual ownership remain in her parents.[7]

A title search conducted by the Trustee as of September 4, 2013, showed that pursuant to the April 27 Deed, title to the 17th Place Property is vested in each of the Defendants and the Debtor as joint tenants, with rights of survivorship.[8] In addition to the April 27 Deed, the title search indicated that a Quitclaim Deed, dated August 28, 2002, had been recorded on February 4, 2008, wherein four individuals unrelated to this litigation were Grantors and the Graggs were the Grantees (the "August 28 Deed").[9] An appraiser engaged by the Trustee testified that, based on comparable sales in the area, the 17th Place Property has a current market value of approximately $110,000 to $120,000.

The parties acknowledge that a partition in kind of the Properties among the bankruptcy estate and the Defendants is impracticable. The Properties are not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power. There are no known liens or encumbrances on either of the Properties, whether filed of

---

[7] *See Case No. 11-13580-M,* Docket No. 1, at 7.

[8] *See* Trustee's Ex. 7-12.

[9] *See* Trustee's Ex. 7-10.

record or otherwise. Prior to the Petition Date, Lavender lived in the Ithica Property. The Debtor also lived in one or more of the Properties prior to the Petition Date.

## Conclusions of Law

The Trustee contends that Debtor's interest in the Properties is property of the bankruptcy estate that he should be allowed to liquidate for the benefit of creditors. Rather than attempt to sell the Debtor's undivided interest in the Properties, the Trustee seeks the authority under § 363(h) to liquidate the Properties and divide the proceeds among the interest holders and administer the estate's share for the benefit of unsecured creditors. The Graggs and the Debtor contend that she has no recognizable ownership interest in the Properties, and that the Trustee has no right to sell them. Lavender takes no position one way or the other.

Debtor holds her interest in the Properties by virtue of separate quitclaim deeds. Under Oklahoma law, a quitclaim deed, made in substantial compliance with the provisions of Chapter 1 (General Provisions) of Title 16 (Conveyances) of the Oklahoma Statutes, is sufficient to "convey all the right, title and interest of the maker thereof in and to the premises therein described."[10] A properly recorded deed puts the world on notice of a claim to title of real property.[11] Sometimes, the face of a deed does not accurately reflect what the parties *intended* to convey. For those situations, the law allows the parties to present evidence to show they intended a different transaction than what appears on the face of the documents. *As between the parties*, the intention

---

[10] Okla. Stat. tit. 16, § 18.

[11] Okla. Stat. tit. 16, § 16 ("Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors.").

of the parties usually prevails.[12] Whether the parties' intent should be binding on an innocent third party purchaser of real property is the subject of the bona fide purchaser doctrine.[13]

*Bona fide purchaser doctrine*

Trustee claims that § 544(a)(3) grants him the right to assert an interest in the Properties. The section provides that

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> * * *
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.[14]

Under this section, as of the filing of the bankruptcy case, a trustee assumes the rights and powers

---

[12] Okla. Stat. tit. 16, § 15 ("Except as hereinafter provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage, or contract relating to real estate *as between the parties thereto*; but no deed, mortgage, contract, bond, lease, or other instrument relating to real estate other than a lease for a period not exceeding one (1) year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided.") (emphasis added). *See also Geb v. Wilkins*, 399 P.2d 456, 458 (Okla. 1965) ("The first element in the construction of any deed, whether it be in connection with the description or some other phase of the conveyance, is to ascertain the intention of the parties, if possible."); *Meeks v. Harmon*, 250 P.2d 203, 206 (Okla. 1952) (". . . our decision is based upon the cardinal rule of construction that a conveyance must be so construed as to give effect to the intention of the parties when that intention can be ascertained.").

[13] *See e.g.*, George G. Bogert et al., Bogert's Law of Trusts and Trustees § 881 (WestNext, database updated December 2013).

[14] § 544(a)(3).

of a hypothetical bona fide purchaser of real property from the debtor.[15] This includes the right to obtain title to property free of certain unrecorded interests.[16] In other words, the law treats the trustee "as if" he or she had purchased the property (i.e., given value in good faith) and perfected title at the time of the commencement of the bankruptcy case, without regard to any actual knowledge that the trustee may have regarding the property.[17] Although not constrained by actual knowledge, the trustee's position as a bona fide purchaser of the property is subject to the state's constructive notice law.[18] In Oklahoma, "[c]onstructive notice is notice imputed by the law to a person not having actual notice."[19]

"The rule is well established in [Oklahoma] that in the transfer of real estate in the absence of actual or constructive notice of a previous conveyance or of matters which would put a purchaser on inquiry, a bona fide purchaser for value will take good title to the property."[20] However, "[u]nder

---

[15] *Id. See Watkins v. Watkins*, 922 F.2d 1513, 1514 (10th Cir. 1991); *Crowder v. Crowder (In re Crowder)*, 225 B.R. 794, 796 (Bankr. D.N.M. 1998).

[16] *Morris v. Kasparek (In re Kasparek)*, 426 B.R. 332, 343–44 (10th Cir. BAP 2010).

[17] § 544(a) ("without regard to any knowledge of the trustee or of any creditor"). *See In re Crowder*, 225 B.R. at 796 ("[Trustee's power under § 544(a)] arises regardless of any actual knowledge the trustee or debtor in possession has of the transfer. . . .The trustee assumes the position of a hypothetical bona fide purchaser and is entitled to avoid any transfer a bona fide purchaser could avoid."); *McCannon v. Marston*, 679 F.2d 13, 15–16 (3rd Cir. 1982) (distinguishing actual "knowledge" from actual "notice").

[18] § 544(a)(3) ("a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected"). *See Watkins*, 922 F.2d at 1514; *In re Crowder*, 225 B.R. at 796.

[19] Okla. Stat. tit. 25, § 12.

[20] *Williams v. McCann*, 385 P.2d 788, 791 (Okla. 1963). *See also Big Four Petroleum Co. v. Quirk*, 755 P.2d 632, 634 (Okla. 1988) ("The elements essential to being a 'bona fide purchaser' of an interest in land are: (1) the payment of a valuable consideration; (2) good faith and the absence of purpose to take an unfair advantage of third persons; and (3) absence of

8

Oklahoma law, a purchaser of land takes the property with constructive notice of whatever appears in the conveyances constituting his chain of title."[21] Therefore, Oklahoma law charges the trustee with constructive notice of any interests in property that could be gleaned from an inspection of the state's title recording system as of the moment of the filing of the bankruptcy case.[22]

The trustee is also charged with a duty to inquire of any party in possession of the property at the time of the bankruptcy filing, if that person is anyone except the debtor.[23] The trustee is held to have constructive notice of any facts he or she would have gleaned had such an inquiry been made regarding the rights of any party in possession.[24] Such an inquiry will reveal if the party in possession has a claim to the property that is adverse or inconsistent with record title. Where such a claim is adverse or inconsistent with record title, a bona fide purchaser is charged with constructive notice of this fact, triggering a duty to make additional inquires regarding title to the

---

notice, actual or constructive, of outstanding rights of others.").

[21] *Watkins*, 922 F.2d at 1514 (*citing Jonas v. Dunn*, 270 P. 46, 50 (Okla. 1928)). *See also* Okla. Stat. tit. 16, § 16.

[22] *See In re Dailey*, 463 B.R. 142, *4 (10th Cir. BAP 2009) (unpublished) ("The doctrine of constructive notice is based on the theory that one who neglects a duty to search a title record should be charged with notice of facts that would have been discovered upon a proper search.") (*citing Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1388 (10th Cir. 1980)).

[23] *Bell v. Protheroe*, 188 P.2d 868 (Okla. 1948) ("These decisions place upon a prospective purchaser of land, in the possession of any person save his vendor, the obligation to inquire of the party in possession of the rights he claims and under whom he claims, and charges the prospective purchaser with any notice which he would have received had such inquiry been made.").

[24] *Id. See also Wade v. Burkhart*, 167 P.2d 357, 358 (Okla. 1946) ("A purchaser of realty is charged with notice of whatever rights persons in actual possession may possess.") (syllabus).

property.[25]

In this case, an inspection of the Tulsa County recording system as of the Petition Date would have revealed the June 21 Deed for the Ithica Property and the April 27 Deed for the 17th Place Property. Both are quitclaim deeds that purport to vest each of the Defendants and Debtor with equal undivided 1/4 interests in fee simple as joint tenants with rights of survivorship. Nothing on the face of the deeds would put an innocent purchaser on notice that there is any trust relationship among the grantors and grantees.

An inquiry of the parties in possession of the Properties as of the Petition Date would have revealed that they were renters who claimed only leasehold rights either directly or indirectly from the Graggs. The Graggs' fee simple interest, as joint tenants, is *consistent* with the interest found in the recorded deeds. Possession by the Graggs' tenants does not run contrary to record title. Finding no claim to title *inconsistent* with record title, a bona fide purchaser would have no duty to inquire further, and therefore would not have discovered the Defendants' claim that title is held in a resulting trust.[26]

In *Morris v. Kasparek (In re Kasparek)*, the court faced almost identical facts, where a renter claimed under a leasehold through a non-debtor joint tenant to property.[27] The Bankruptcy Appellate Panel for the Tenth Circuit rejected the holding by the bankruptcy court that a trustee is obligated to inquire beyond the tenancy to investigate the relationship of the joint tenants where less than all were lessors of the tenant. The court held that ". . .implied notice based on the occupation

---

[25] *Morris v. Kasparek (In re Kasparek)*, 426 B.R. 332, 347–48 (10th Cir. BAP 2010).

[26] *See infra* at 11.

[27] *In re Kasparek*, 426 B.R. at 332.

of property by someone other than a record title holder is limited to notice of the *possessor's* potential claim to the property, whatever that may be, and once it is learned that the possessor does not claim a right adverse to the record title holders, no further inquiry is required."[28]

Defendants argue that a prospective purchaser has an additional duty to inquire about the status of title where a party has obtained title through quitclaim deed,[29] citing *In re Kasparek* as authority for this proposition.[30] The court in *In re Kasparek*, in dicta, cited to a Kansas Court of Appeals case that held such a duty exists under **Kansas** law.[31] Neither that case, nor the passing reference to it in *In re Kasparek*, have any application to this proceeding. Oklahoma courts have consistently held that a purchaser under a quitclaim deed is a bona fide one.[32] This means that under **Oklahoma** law, where a party takes title to property under a quitclaim deed, a bona fide purchaser is under no greater duty to inquire into the circumstances of the grantees' title than he or she would if the conveyance had been by warranty deed.

---

[28] *Id.* at 348.

[29] *See* Trial Brief of Jimmy Lewis Gragg and Glenda Gragg, Docket No. 25, at 6–7.

[30] *In re Kasparek*, 426 B.R. at 332.

[31] *Id.* at 345–46.

[32] *Williams v. McCann*, 385 P.2d 788, 791 (Okla. 1963). *See also* Okla. Stat. tit. 16, § 18 ("A quitclaim deed, made in substantial compliance with the provisions of [Chapter 1 of Title 16 of the Oklahoma Statutes], shall convey all the right, title and interest of the maker thereof in and to the premises therein described."); *Tucker v. Leonard*, 183 P. 907, 907 (Okla. 1919) ("[O]ne can be a bona fide purchaser under a quitclaim deed where the vendor undertakes to sell and convey the land described in the deed, as he can under a warranty deed, the difference in form between a quitclaim deed and a warranty deed being that in the former the words 'and warrant the title to the same' are omitted."); *Garrett v. Reinhart*, 36 P.2d 884 (Okla. 1934) (same).

*Resulting Trust*

The Graggs assert that conveyance of the Properties to Lavender and Debtor was done for estate planning purposes, that the intention of each of the Defendants and Debtor was that Debtor and Lavender would hold only bare legal title, and that no present equitable interest in the Properties would be transferred until the death or incapacity of the Graggs. Mr. Gragg paid all consideration for the Properties, all property taxes, all maintenance and upkeep costs, collected all rent payments, and took all beneficial interest in the Properties. The Defendants assert that these facts mandate a conclusion that, as of the Petition Date, Debtor held only bare legal title to the Properties, and that her interest is subject to a resulting trust in favor of the Graggs. The Trustee does not lodge a challenge to the existence of a resulting trust because he does not believe it affects the outcome of this litigation or his right to sell Debtor's 1/4 interest in the Properties. The Court will assume, for purposes of this litigation only, that the Properties were subject to a resulting trust in favor of the Graggs as of the Petition Date.

Under Oklahoma law, "[t]here is a statutory presumption that every estate in land granted by a deed shall be deemed an estate in fee simple unless limited by express words."[33] "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."[34] The Supreme Court of Oklahoma has described a resulting trust as follows:

---

[33] *Cleary Petroleum Corp. v. Harrison*, 621 P.2d 528, 532 (Okla. 1980) (citing Okla. Stat. tit. 16, § 29, "Every estate in land which shall be granted, conveyed or demised by deed or will shall be deemed an estate in fee simple and of inheritance, unless limited by express words.").

[34] Okla. Stat. tit. 60, § 137.

12

> Resulting trusts are those which arise where the legal estate in property is disposed of or acquired, not fraudulently or in violation of any fiduciary duty, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner.[35]

Oklahoma courts place a high burden of proof on the party seeking to establish such a trust.[36]

Under Oklahoma law, no unrecorded trust, either express or implied in law, will defeat the title of a bona fide purchaser of real property. With regard to express trusts, this is explicitly provided by statute.[37] At one time, the same was explicitly provided with regard to implied and resulting trusts by Section 138 of Title 60 of the Oklahoma Statutes.[38] Although that statute has been repealed,[39] the substance of the law has not changed. The repeal reinstated and reestablished the common law to the issue of whether a resulting trust could defeat title of a bona fide purchaser.[40]

---

[35] *Powell v. Chastain*, 318 P.2d 859, 862 (Okla. 1957).

[36] *Cacy v. Cacy*, 619 P.2d 200, 202 (Okla. 1980) ("A constructive or resulting trust arises entirely by implication of law, irrespective of contract. Although the Statute of Frauds does not preclude the establishment of such trusts by parol evidence, it is difficult to prove their existence. Evidence must be clear, unequivocal and decisive beyond a reasonable doubt. A mere preponderance of the evidence is not sufficient. Evidence of the most satisfactory kind must be produced by the party seeking to establish the trust.") (footnotes omitted).

[37] *See* Okla. Stat. tit 60, § 175.45 (express trusts).

[38] *See* Okla. Stat. tit. 60, § 138 (repealed by Okla. Laws 1941, p. 265, § 53) ("No implied or resulting trust can prejudice the rights of a purchaser or incumbrancer of real property, for value and without notice of the trust."). *See also In re Kasparek*, 426 B.R. 332, 343 (10th Cir. BAP 2010) (applying identical Kansas statute, Kan. Stat. Ann. § 58-2402).

[39] Okla. Laws 1941, p. 265, § 53 (repealing Okla. Stat. 1931, § 11810 (codified at Okla. Stat. tit. 60, § 138)). *See also* Okla. Stat. Ann. tit. 60, § 175.1 (Historical and Statutory Notes).

[40] Okla. Stat. tit. 60, § 175.50 ("The repeal of any section of the statutory law of this state by this act, which section abrogated or restated the common-law rule, shall operate to reinstate and reestablish the common-law rule applicable thereto, except as the subject matter thereof may

In general, for purposes of allowing a bona fide purchaser who takes for value and without notice to prevail, the common law made no distinction between unrecorded explicit trusts and other implied trusts in law.[41] According to the Restatement (Second) of Trusts:

> If the trustee of a resulting trust in breach of trust transfers trust property to a bona fide purchaser, the transferee takes the property free of the resulting trust; but if the transferee is not a bona fide purchaser, he does not hold it free of the resulting trust.[42]

Finding no authority to the contrary, the Court finds this to be an accurate statement of Oklahoma common law.[43]

Assuming that Debtor held the Properties in a resulting trust in favor of the Graggs does not alter the outcome of this case. As between the Defendants and Debtor, such an unrecorded trust might have some bearing, but it will not defeat the interest of a bona fide purchaser. If the Trustee merely stepped into the shoes of the Debtor (i.e., was limited to administering Debtor's interest in the Properties that became property of the estate under § 541), then the resulting trust may prevent Trustee from prevailing in this matter. The Code gives the Trustee the additional "strong arm" powers of a bona fide purchaser under § 544(a)(3). Those powers allow Trustee to behave as a hypothetical bona fide purchaser. If Trustee qualifies as a bona fide purchaser under Oklahoma's

---

be changed by the provisions of this act.").

[41] *See* George G. Bogert et al., Bogert's Law of Trusts and Trustees § 881 (WestNext, database updated December 2013).

[42] Restatement (Second) of Trusts § 408 (1959).

[43] *See Patterson v. McKeehen*, 32 P.2d 875, 875 (Okla. 1934) ("No implied or resulting trust can prejudice the rights of a purchaser or incumbrancer of real property for value and without notice of the trust.") (syllabus); *Payne v. Allen*, 62 P.2d 1227, 1227 (Okla. 1936) ("Where a person is bona fide purchaser in good faith and without notice that the grantor was a trustee, a deed of conveyance by such trustee to such innocent purchaser is a valid and binding grant as against the [trust beneficiary].") (syllabus).

constructive notice laws, a secret unrecorded trust, whether express or implied in law, will not defeat that interest.

The Defendants have not presented any facts that would put the Trustee on constructive notice of any defect in Debtor's title to the Properties.[44] None of the usual duties of inquiry would have made the Trustee aware of a resulting trust in favor of the Graggs. The argument that such a trust was disclosed in the Debtor's schedules or at a § 341 meeting is equally unpersuasive, because the Trustee is not constrained by *actual* knowledge.[45] The Court concludes that under the facts of this case, Trustee qualifies as a bona fide purchaser. As a bona fide purchaser under § 544(a)(3), Trustee takes Debtor's 1/4 undivided interest in the Properties, and may sell the same for the benefit of the bankruptcy estate.

*Sale of property under § 363(h)*

Section 363(h) of the Bankruptcy Code gives the Trustee the power to partition and sell property of the estate that is otherwise held in joint tenancy with other non-debtors. Recognizing the difficulty this may cause for the non-debtor co-owners, the Code requires that the Trustee meet certain conditions before proceeding with such a sale. Section 363(h) provides:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety,

---

[44] Debtors also argue that a deed that is marked "Corrected," or a deed that is made among people that appear to be related should trigger additional duties to inquire regarding circumstances of ownership. They cite no authority to support these arguments.

[45] *See In re Kasparek*, 426 B.R. at 345 n.51 ("Under the plain language of § 544(a)(3), any actual knowledge of an unrecorded interest that a trustee might have had or might obtain is irrelevant for the purposes of qualifying as a bona fide purchaser.") (*citing In re Deuel*, 594 F.3d 1073, 1076–77 (9th Cir. 2010)).

> only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.[46]

The parties have stipulated that a partition in kind of the Properties among the Defendants and the estate is impracticable.[47] Likewise, they have stipulated that the Properties are not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.[48] This leaves only the second and third elements of § 363(h) to be addressed. The Trustee may only force a sale of the Properties if "sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners."[49] Although the parties did not stipulate to this fact, the Court has no difficulty finding this requirement satisfied in the case of residential rental property. As one court noted,

> Numerous courts take judicial notice that the sale of the estate's undivided interest in real property would realize significantly less than a sale free of the co-owner's interest. This Court joins those courts. It is difficult to see that any investor would be interested in investing in a rental property, part of which was owned or controlled

---

[46] § 363(h).

[47] *See* § 363(h)(1).

[48] *See* § 363(h)(4).

[49] § 363(h)(2).

by a stranger.[50]

The Defendants do not argue otherwise. The Court finds that the second element of § 363(h) is met.

Lastly, the Court must balance the benefit to the estate of the sale of the Properties free of the Defendants' interests against any detriment to the Defendants.[51] The benefit to the estate of the sale of the Properties free and clear of the Defendants' interests is substantial. According to the Trustee's appraiser, based on comparable sales in the area, the two properties combined could sell for approximately $172,000.[52] The administration of the estate's interest in the Properties will allow the Trustee to pay a significant percentage, if not all, of the unsecured claims in this case. The Defendants make no cognizable argument regarding how the sale of the Properties will cause a detriment to their interests. The Defendants will essentially be made whole because they will receive the full value of their remaining 3/4 interest in the Properties after the sale under § 363(h). The Court finds that the benefit to the estate of a sale of the Properties free and clear of the Defendants' interests outweighs any detriment to the Defendants. To the extent the Defendants prefer to retain the Properties as rental properties, they have the right to purchase them from the Trustee under § 363(I).

## Conclusion

The Trustee qualifies as a bona fide purchaser under Oklahoma's constructive notice law, and as such takes the Debtor's 1/4 undivided interest in the Properties under § 544(a)(3) free of any

---

[50] *Gabel v. Spicer (In re Gabel)*, 353 B.R. 295, 302 (Bankr. D. Kan. 2006) (*citing In re Griffin*, 123 B.R. 933, 935–36 (Bankr. S.D. Fla. 1991); *In re Jenkins*, 347 B.R. 77, 84–85 (Bankr. N.D. Ill. 2006)).

[51] *See* § 363(h)(3).

[52] Calculated from the lower number in each valuation, $62,000 + $110,000 = $172,000.

resulting trust asserted by the Graggs. Trustee has met the requirements of § 363(h), which allows him to sell both the estate's interest and the Defendants' interests in the Properties in order to administer the estate's interest for the benefit of creditors. The Trustee is authorized to sell the Properties, with 1/4 of the net proceeds being paid to the estate, with the balance to be remitted to the Graggs and Lavender. Notice of the proposed sale must be given to all creditors and parties in interest in Case No. 11-13580-M as required under § 363.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 30th day of December, 2013.

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

6625.7